# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1677

_____

Gerald W. Kerr,      *

                 *

        Appellant,      *

                 *     Appeal from the United States

     v.               *     District Court for the

                 *     Eastern District of Missouri.

Charles F. Vatterott & Co.;      *

Commerce Bank of St. Louis, N.A.,      *

                 *

        Appellees.      *

_____

Submitted: March 8, 1999

Filed: July 12, 1999

_____

Before RICHARD S. ARNOLD and HANSEN, Circuit Judges, and STROM,[1] District
Judge.

_____

HANSEN, Circuit Judge.

Gerald Kerr, a participant in a pension plan, brought this ERISA action against
Charles F. Vatterott & Co. (Vatterott & Co.) (the plan's administrator) and Commerce
Bank, the plan's trustee. Though Vatterott & Co. eventually paid Kerr all of the
accumulated funds in his account, Kerr sought a remedy for the three-and-a-half year

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of
Nebraska, sitting by designation.

delay in payment of the account and sought imposition of statutory penalties for failure to timely provide requested plan documents. Following a bench trial, the district court granted judgment in favor of Vatterott & Co. and Commerce Bank on Kerr's ERISA claims, as well as his supplemental state law claims. Kerr appeals only the judgment in favor of Vatterott & Co. on the ERISA claims. We affirm in part, reverse in part, and remand.

## I.

Gerald Kerr Homes Corp. (Kerr Homes), of which Kerr is the president and sole shareholder, formed a partnership called Legacy Homes with Vatterott & Co. to acquire, develop, and market real estate. Kerr Homes managed the daily operations of the Legacy Homes partnership and Vatterott & Co. provided the financial backing for the enterprise. Vatterott & Co. maintained the bank account for the partnership. Unbeknownst to Vatterott & Co., Kerr opened a separate bank account in the Legacy Homes partnership name, eventually depositing over $260,000 of partnership funds into the account and disbursing $153,000 to Kerr Homes.

Legacy Homes employees, including Kerr, worked on Vatterott & Co. projects as well as Legacy Homes projects and thus were eligible to participate in Vatterott & Co.'s 401(k) pension plan. Vatterott & Co. made matching employer contributions to the plan on behalf of Legacy Homes employees. On July 12, 1991, Vatterott & Co. notified all Legacy Homes employees, including Kerr, that they would be terminated effective July 14, 1991, because Vatterott & Co. could no longer fund Legacy Homes' payroll and benefit accounts.

Vatterott & Co. is the plan administrator and Commerce Bank is the trustee of the Vatterott & Co. 401(k) plan. The plan entitles a plan participant who is terminated prior to retirement to receive the net credit balance in his individual plan account. Under the plan, the trustee must distribute a terminated employee's account

as soon as practicable after his termination, but the trustee may not distribute any funds until so instructed by the plan administrator. The trustee determines the disbursement amount as the value of the individual's account on the last date of the quarter immediately preceding request and authorization for the disbursement.

Kerr was fully vested in the 401(k) plan at the time of his termination from Legacy Homes. He submitted a withdrawal request to Vatterott & Co. on October 28, 1991, but received no response. The value in Kerr's 401(k) account as of September 30, 1991 (the valuation date based on Kerr's October request) was $16,968. Kerr again requested of Vatterott & Co. that his withdrawal form be forwarded to Commerce Bank for distribution in December 1991, and again received no response. On February 8, 1993, Kerr mailed a letter to Vatterott & Co. requesting instructions and documents to facilitate a transfer of his 401(k) account. He also requested a copy of the latest plan description. Again, Kerr received no response. Finally, on July 15, 1993, Gregory Vatterott informed Kerr that Vatterott & Co. would not distribute Kerr's 401(k) funds until Kerr paid Vatterott & Co. $5,902 to reimburse Vatterott & Co. for Kerr's half of employer matching contributions that Vatterott & Co. had made on behalf of the Legacy Homes partnership employees. Kerr refused to pay the matching funds and Vatterott & Co. refused to distribute Kerr's personal 401(k) account.

In January 1995, Kerr's attorney demanded that Vatterott & Co. and Commerce Bank provide a full and complete accounting of Kerr's plan account, provide a copy of the plan, and effect a trustee-to-trustee transfer of Kerr's funds. Vatterott & Co. responded with information about Kerr's account, including the amount of Kerr's contributions; the amount of employer matching contributions; the investment vehicles in which the account had been invested; and the amount of earnings on the account. Vatterott & Co. also stated that Commerce Bank would send a copy of the plan to Kerr, which Commerce Bank did within approximately one week of Kerr's request. Vatterott & Co. still refused to disburse Kerr's personal 401(k) funds until

it received Kerr's share of the employer matching funds that Vatterott & Co. had made to other Legacy Homes employees' accounts. Commerce Bank informed Kerr that it could not distribute his account until it received authorization from Vatterott & Co. as the plan administrator.

On March 22, 1995, Gregory Vatterott advised Kerr's counsel that Vatterott & Co. sought the matching employer contributions from Kerr Homes (the corporation) as Vatterott & Co.'s partner in the Legacy Homes partnership rather than from Kerr personally and provided Kerr with a withdrawal request form. Kerr submitted the distribution request on April 11, 1995, and Vatterott & Co. authorized distribution of Kerr's plan account on April 17, 1995. On May 4, 1995, Commerce Bank made a trustee-to-trustee transfer of $22,490, the value of Kerr's account as of March 31, 1995, the last date of the quarter immediately preceding the April request and authorization. The district court found that Kerr's account earned $5,522, resulting in an 8.6 percent annualized rate of return for the period between September 30, 1991, the valuation date for Kerr's first requested disbursement, and March 31, 1995.

Kerr filed suit on April 10, 1995, the day before his final request for disbursement, seeking actual damages and interest under 29 U.S.C. § 1132(a)(1)(B); statutory penalties pursuant to section 1132(c); and an award of attorney's fees and costs under section 1132(g). Kerr also sought punitive damages based on supplemental state law claims. Kerr amended his complaint by interlineation immediately prior to trial, adding a claim for equitable relief under 29 U.S.C. §1132(a)(3). Following a bench trial, the district court dismissed the state law claims as pre-empted by ERISA; found Kerr's claim for actual damages under section 1132(a)(1)(B) for the amount in his 401(k) account moot because Kerr received the full amount of his account prior to trial; denied the claim for interest as an inappropriate remedy under either section 1132(a)(1)(B) or section 1132(a)(3); and declined to award a statutory penalty under section 1132(c) because Kerr did not prove that Vatterott & Co. had received his request for ERISA documents. The

4

district court also declined Kerr's request for attorney's fees and costs because Kerr was unsuccessful on his ERISA claims. Kerr appeals the judgment, arguing that lost interest is an appropriate equitable remedy under section 1132(a)(3) and proof of receipt is not an element of his claim under section 1132(c).

## II.

This appeal involves primarily issues of law, which we review de novo. We review any issues regarding the district court's factual findings for clear error. See Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1054 (8th Cir. 1997). Kerr's appeal involves three ERISA provisions: §§1132(a)(1)(B), 1132(a)(3), and 1132(c), which we take up in order.

### A.   § 1132(a)(1)(B): Recovery for Amounts Due

Section 1132(a)(1)(B) allows a participant or beneficiary to bring suit "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Kerr does not dispute that he has received the funds in his account to which he is entitled under the plan, but argues instead that his recovery was inadequate because he had to wait three-and-a-half years for his money and had to file suit before Vatterott & Co. finally paid the account over. The plain language of the statute precludes Kerr's argument that his remedy under this section is inadequate. Section 1132(a)(1)(B) provides Kerr a cause of action "to enforce his rights under the terms of the plan;" it does not provide recourse for extracontractual damages related to a breach of the plan. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) ("[T]he statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan--§ [1132](a)(1)(B) . . .-- says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim."); Medina v. Anthem Life Ins. Co., 983 F.2d 29, 32 (5th Cir. 1993) (holding

5

that section 1132(a)(1)(B) does not provide recovery for extracontractual damages). We agree with the district court that Kerr has recovered all that he is entitled to recover under this section and that his appeal in this regard is moot.

## B.    § 1132(a)(3): Recovery for Breach of Fiduciary Duties

Section 1132(a)(3) allows a participant or beneficiary to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." This section allows an individual plan participant to seek equitable remedies in his individual capacity for a breach of fiduciary duty not specifically covered by the other enforcement provisions of section 1132.  See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (explaining the interrelationship of section 1132's enforcement provisions).  Kerr argues that Vatterott & Co. breached its fiduciary duty as plan administrator by wrongfully withholding payment of his plan funds and that he was injured because he could have earned more than the "paltry" return earned by the plan if his funds had not been wrongfully withheld.[2]  Whether or not there was a breach is not at issue, and we do not decide whether this alleged breach is cognizable under section 1132(a)(3).  Rather, the contention arises from the appropriate form of relief afforded by section 1132(a)(3).

Though the Supreme Court characterized section 1132(a)(3) as a "catchall" or "safety net," see Howe, 516 U.S. at 512, section 1132(a)(3) is not a limitless free-for-all.  The plain language of the statute limits relief to "appropriate equitable relief." The Supreme Court confirmed that section 1132(a)(3) recovery is limited to classic equitable remedies such as injunctive, restitutionary, or mandamus relief, and does

---

[2]Kerr confirmed at oral argument that he did not claim a breach of fiduciary duties based on imprudently investing the plan assets.

not extend to compensatory damages.  See Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58 (1993); see also Howe v. Varity Corp., 36 F.3d 746, 755 (8th Cir. 1994) ("[A]fter Mertens, compensatory damages are not recoverable under Section 1132(a)(3)."), aff'd on other grounds, 516 U.S. 489 (1996).  Kerr's argument that leaving him without a remedy would be contrary to ERISA's basic purpose cannot supplant the specific language in section 1132(a)(3) limiting recovery to "appropriate equitable relief."  See Mertens, 508 U.S. at 261 (emphasis added) ("[V]ague notions of [ERISA's] 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration.").

The Supreme Court discussed ERISA's broad purposes of providing relief where it might not otherwise specifically exist in Howe.  This general discussion, however, does not change the Supreme Court's limited reading of "appropriate equitable relief" in Mertens.  In the Supreme Court, Howe involved only injunctive relief, not monetary damages.[3]  The Supreme Court was concerned with giving individual plan participants a cause of action for breaches of fiduciary duties as opposed to limiting recovery to relief on behalf of the plan; it was not concerned with the type of recovery to which the individuals were entitled.  See Howe, 516 U.S. at 495-96 (limiting its discussion to whether recovery under section 1132(a)(3) was restricted to relief that benefitted only the plan as some Courts of Appeals had held).  See also Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 290-91 (5th Cir. 1997) (noting that Howe did not overrule either Russell or Mertens).  In fact, the Supreme Court in Howe cited Mertens with approval in distinguishing Russell.  See

---

[3]We also held in Howe that the appellants were entitled to a monetary award, which we called "in the nature of restitution," equal to the amount they would have received as benefits if they had not been fraudulently lured away from the plan sponsor.  See 36 F.3d at 756.  This portion of Howe was not involved in the appeal to the Supreme Court, see 516 U.S. at 495, and we do not read the Supreme Court's opinion as addressing the extent to which monetary awards may be considered equitable relief.

Howe, 516 U.S. at 509-10 (noting that Russell did not control disposition of a section 1132(a)(3) case because Russell specifically disavowed reliance on section 1132(a)(3), "perhaps because she was seeking compensatory and punitive damages and [section 1132(a)(3)] authorizes only 'equitable' relief," citing Mertens, 508 U.S. at 255, 256-58 & n.8).

To summarize, section 1132(a)(3) provides relief for the individual harm that Kerr may have suffered from Vatterott & Co.'s breach of its fiduciary duties, but limits his recovery to "appropriate equitable relief," which includes injunctive, restitutionary, and mandamus relief, but does not include compensatory damages. Kerr contends that section 1132(a)(3)(B) entitles him to a monetary award for the difference between the return that he could have earned had he had control of the funds during the three-and-a-half years that Vatterott & Co. wrongfully withheld payment of the 401(k) plan funds and the return that the plan earned during that time period. The question we must answer then is this: Is the difference between what Kerr hypothetically could have earned on the funds in his 401(k) account and what the plan actually earned "appropriate equitable relief," i.e., is it restitution or is it compensatory damages?

Though we sometimes speak of restitution in generic terms, restitution may be either equitable or compensatory. See Dana M. Muir, ERISA Remedies: Chimera or Congressional Compromise?, 81 Iowa L. Rev. 1, 36-38 (1995) (noting the difficulty of categorizing restitution as either legal or equitable); see also Black's Law Dictionary 270 (Abr. 6th ed. 1991) (defining "compensatory damages" as "Damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him."). The basic distinction between equitable restitution[4] and compensation focuses on the genesis of the award sought by the plaintiff. A restitutionary award focuses

_____

[4]For the remainder of this opinion, we use "restitution" to refer to equitable restitution.

on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him. See Dan B. Dobbs, Law of Remedies § 4.1(1), at 369-71 (Abr. 2d ed. 1993). See also Landwehr v. DuPree, 72 F.3d 726, 735 (9th Cir. 1995) (Under ERISA, "[t]he purpose of restitution is to force a recipient to restore ill-gotten . . . profits") (citing Mertens).

Equitable relief clearly includes injunctive and declaratory relief. We held in Howe that because the employees in question were fraudulently induced to leave the pension plan, they were entitled to an injunctive order reinstating them as members of the plan. See Howe, 36 F.3d at 756. The Supreme Court affirmed that the employees were indeed entitled to the injunction. See Howe, 516 U.S. at 515. The monetary portion of our award reflected the benefits that the employees would have earned if they had remained plan participants. The injunction did not provide retrospective relief for the period in which the employees were not covered under the plan. Thus, our "restitutionary" award was necessary as a corollary to the injunction--restoring the plaintiffs "to the position they would have occupied [as participants in the plan] if the misrepresentations . . . had never occurred." Howe, 36 F.3d at 756. Similarly, in Slice v. Sons of Norway, we looked to the nature of the relief sought and found that the plaintiff in that case sought compensation for reliance on an extracontractual promise, which was not equitable in nature. 34 F.3d 630, 633 (8th Cir. 1994). We now turn to Kerr's claim, looking at the nature of his requested remedy rather than the characterization of his claim.

Kerr is seeking monetary damages for the difference between what he says he could have earned and what he in fact earned, or "lost opportunity costs." He is not claiming lost benefits payable under the plan, but losses he allegedly suffered as a consequence of the plan administrator's failure to timely distribute his accumulated

9

account to him for reinvestment. Vatterott & Co. gained nothing by withholding Kerr's money. Kerr received the earnings in his account. If we focus on Vatterott & Co.'s zero gain, rather than Kerr's alleged loss, there is nothing to disgorge. Thus, Kerr's claim is not a claim for restitution. "[W]hat [Kerr] in fact seek[s] is nothing other than compensatory damages--monetary relief for all losses [he] sustained as a result of the alleged breach of fiduciary duties." Mertens, 508 U.S. at 255. As such, Kerr's requested relief is not recoverable as "appropriate equitable relief" under ERISA section 1132(a)(3). Id. See also Rogers v. Hartford Life and Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) (holding that medical expenses incurred due to a wrongful denial of disability benefits, i.e., "make whole" damages, were not equitable in nature under Mertens); Allinder v. Inter-City Prods. Corp., 152 F.3d 544, 552 (6th Cir. 1998) (reluctantly declining to award compensatory damages caused by a wrongful delay in disability benefits under Mertens), cert. denied, 119 S. Ct. 1115 (1999); Kemmerer, 70 F.3d at 289 (money damages to recover adverse tax consequences of early termination are not equitable); Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 13 (1st Cir. 1994) (reimbursement for taxes on lump-sum distribution is not equitable, though couched as "make whole" relief); Novak v. Andersen Corp., 962 F.2d 757, 760-61 (8th Cir. 1992) (denying relief for recovery of the tax penalty paid by plan participants where the plan administrator breached his duty to inform participants of their roll-over options at the time of the plan withdrawal), cert. denied, 508 U.S. 959 (1993).

Kerr directs our attention to a recent Third Circuit case holding that interest on delayed benefits under an employer's disability insurance program was recoverable under section 1132(a)(3) if the delay amounted to a breach of fiduciary duty. See Fotta v. Trustees of the United Mine Workers of Am., Health and Retirement Fund, 165 F.3d 209 (3d Cir. 1998). The Third Circuit based its decision on unjust enrichment. See id. at 213. The plan earned interest on the money that it should have paid to the plaintiff in disability payments and retained the interest when it finally paid the funds to the plaintiff. That is a classic case of restitution--disgorging the

profits from the ill-gotten wrongdoer. The 401(k) plan at issue in this case was a defined contribution plan. All earnings that Kerr's individual account generated were credited to his account. Kerr, rather than the plan, received the account's earnings. Thus, no one was unjustly enriched at Kerr's expense. To the extent that Fotta may be read to allow recovery of interest as extracontractual or consequential damages, we respectfully disagree with that holding.

Prejudgment interest awards are permitted under ERISA where necessary to afford the plaintiff "other appropriate equitable relief" under section 1132(a)(3)(B). See Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1330-31 (8th Cir. 1995); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.) (affirming an award of prejudgment interest because the employer had the use of the money during the period it wrongfully withheld benefits), cert. denied, 454 U.S. 968 (1981), and 454 U.S. 1084 (1981). Prejudgment interest, like restitution, can be either legal or equitable in nature. See Dependahl, 653 F.2d at 1219 ("Both at law and equity, interest is allowed on money due."). See also Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.) (the purposes of prejudgment interest are "to compensate prevailing parties for the true costs of money damages incurred [legal, compensatory damages], and . . . to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation [equitable relief]"), cert. denied, 476 U.S. 1141 (1986). A common thread throughout the prejudgment interest cases is unjust enrichment--the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute. As we explained above, however, Vatterott & Co. was not unjustly enriched because it did not keep the earnings or have the use of Kerr's funds during the delay period.

We also note that Kerr received compensation for the time value of his money when he received the earnings on his account. The district court found that the fund

11

earned an 8.6 percent annual rate of return.[5]  This is higher than the statutory rate of 5.89 percent that would have been used to determine a prejudgment interest award. See 28 U.S.C. §1961(a) (1994) (setting the postjudgment interest rate for civil cases at "a rate equal to the coupon issue yield equivalent (as determined by the Secretary of Treasury)"); Mansker, 54 F.3d at 1331 ("28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest" under ERISA).  To award Kerr prejudgment interest in addition to the earnings he received on the account during the time the account was in dispute would be punitive rather than equitable.  Cf. Ford v. Uniroyal Pension Plan, 154 F.3d 613, 618 (6th Cir. 1998) (treating prejudgment interest under section 1132(a)(1) as compensatory and noting that "an excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one"); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1102 (8th Cir. 1982) (disallowing the receipt of both prejudgment interest and liquidated damages under the Age Discrimination in Employment Act because an award of both would result in double recovery, contrary to the notion of "make whole" relief).  To the extent that prejudgment interest is allowed as an equitable remedy in an ERISA case, we conclude that prejudgment interest is not warranted in this case because Vatterott & Co. was not unjustly enriched and Kerr received quite adequate compensation for the time the funds were improperly withheld.  We

---

[5]Kerr argues that the fund earned less than 5 percent during the relevant period. Kerr bases this allegation on testimony by a Commerce Bank representative that, without a calculator, she would place the earnings on the fund at less than 5 percent for the period from December 31, 1991, through March 31, 1995.  (See Appellant's Br. at 5 n.3.)  The 8.6 percent rate used by the district court is based on the period between September 31, 1991, and March 31, 1995.  The difference in rates is due to faltering market conditions following the end of 1991.  Because Kerr claims he should have received a distribution based on the fund's value as of September 31, 1991, the district court's finding that the fund earned, and Kerr received, an 8.6 percent return is not clearly erroneous.

therefore agree with the district court that Kerr is entitled to no recovery under section 1132(a)(3) because the remedies he seeks are not equitable in nature.

## C.   § 1132(c): Recovery for Failure to Provide Requested Documents

Under 29 U.S.C. § 1024(b)(4), the plan administrator, upon written request, is required to furnish certain enumerated reports to plan participants. Section 1132(c)(1)(B) penalizes the plan administrator for failure to supply requested information within thirty days of the request by making the administrator, "in the court's discretion[,] personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . ."  29 U.S.C. §1132(c)(1).

Vatterott & Co. does not dispute that the plan description is an enumerated document within the meaning of section 1024(b)(4), or that it did not supply the document until Commerce Bank, under Vatterott & Co.'s direction, sent the plan description on February 2, 1995.  Nonetheless, the district court found that Vatterott & Co. was not liable under section 1132(c) based on the February 8, 1993, request because Kerr failed to prove that Vatterott & Co. received his request. We review a district court's denial of a penalty for abuse of discretion. See Ames v. American Nat'l Can Co., 170 F.3d 751, 760 (7th Cir. 1999); Wesley v. Monsanto Co., 710 F.2d 490, 491 (8th Cir. 1983). "'A district court by definition abuses its discretion when it makes an error of law.'" Jenkins v. Missouri, 158 F.3d 980, 982 (8th Cir. 1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

Kerr had the burden of proving the elements of his claim. Section 1024(b)(4) requires a plan administrator to provide enumerated documents, including the plan description, to participants "upon written request." Thus, Kerr had to prove that: 1) he requested the plan description in writing, and 2) Vatterott & Co. failed to provide it. The district court found that "[o]n February 8, 1993, Kerr sent a letter to Vatterott

13

& Co. requesting . . . that he be provided a copy of the latest Plan description." <u>Kerr v. Charles F. Vatterott & Co.</u>, No. 4:95CV629, Mem. & Order at 6 (E.D. Mo. Jan. 23, 1998). The district court also found that "Kerr received no response to this request." <u>Id.</u> Thus, based on the district court's undisputed factual findings, Kerr has met his initial burden of proof on the elements of his claim.

The district court denied Kerr relief, however, because it found that Kerr did not satisfy his burden of proving that Vatterott & Co. in fact received the request. We find this conclusion erroneous for a variety of reasons. First, the statute only required that Kerr <u>request</u> one of the enumerated documents. Kerr provided evidence that he sent a letter containing a request for the plan description, which the district court apparently found credible, as it included it in the findings of fact. The district court's reliance on <u>Fisher v. Metropolitan Life Ins. Co.</u>, 895 F.2d 1073 (5th Cir. 1990), is misplaced in this respect. The <u>Fisher</u> court denied imposition of a penalty because it was unclear that the request--a scribbled note requesting "'a copy of the policies covering my contract for salary continuation'"--was for a document covered by the disclosure statute. <u>Id.</u> at 1077. Vatterott & Co. makes no similar claim here.

Second, there is a general rebuttable presumption that a properly mailed document is received. <u>See</u> <u>In re Hairopoulos</u>, 118 F.3d 1240, 1244 (8th Cir. 1997). Thus, even if Kerr bears the burden of proving receipt of the request, this presumption satisfies his initial burden. Third, Vatterott & Co. provided no evidence to rebut the presumption that the mailed request was received. Vatterott & Co. has never disputed that it received the request,[6] but argues only that there is <u>no proof</u> that it received the request. Finally, nonreceipt of the request is more properly characterized as a defense

_____

[6]Vatterott & Co. did not raise the issue of nonreceipt of the request at trial. In fact, Vatterott & Co. did not address the penalty issue at all in its Proposed Findings of Fact and Conclusions of Law submitted to the district court. (<u>See</u> Appellant's App. at 243-51.) At oral argument, counsel for Vatterott & Co. admitted that neither party ever inquired or investigated whether Vatterott & Co. actually received the request.

14

to the statutory penalty. See 29 U.S.C. §1132(c)(1) ("Any administrator . . . who fails or refuses to comply with a request for any information [under §1024(b)(4)] . . . (unless such failure or refusal results from matters reasonably beyond the control of the administrator)" may be liable for a discretionary penalty) (emphasis added). As the proponent of the affirmative defense that its failure to provide the plan description was beyond its control because it did not receive the request, Vatterott & Co. has the burden of establishing its defense.

Regardless of where the burden of proof lies, the district court found, and Vatterott & Co. does not dispute, that Kerr sent the request. Thus, a presumption arose at trial that once sent, the request was received. Vatterott & Co. failed to provide any evidence to the contrary. The district court erred as a matter of law when it concluded that despite these findings, Kerr faced an additional burden of proving actual receipt. If Vatterott & Co. had provided some evidence that it did not receive the request, the district court may have properly placed the ultimate burden on Kerr. Because Vatterott & Co. provided absolutely no evidence that it did not receive the request, however, we hold that Kerr has met his burden of proving his entitlement to a discretionary award of penalties under the statute. See Fed. R. Civ. P. 301 ("a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption"). Though it may be hard for Vatterott & Co. to prove a negative, a contrary conclusion reads more into the statute than its plain language supports and would place a burden on ERISA participants and beneficiaries to mail all correspondence to their plan administrators by return receipt requested in anticipation of litigation. We do not read ERISA to require a participant to do anything other than make a clear written request for plan documents that he wishes to see. The district court's factual findings lead to the inescapable conclusion that Kerr did just that.

We reverse and remand to the district court with orders to vacate its judgment on this issue and to consider whether or not to assess a penalty under the statute. Any

penalty to be assessed is at the court's discretion. We note that when other courts have assessed this penalty, they have generally looked at the prejudice to the plaintiff and the nature of the plan administrator's conduct. See Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996). We caution, however, that "prejudice is not a prerequisite to an award of civil penalties." See Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993) (quotations omitted) (noting that the undisputed facts of the case required some type of award where the plan administrator provided no explanation for its twelve month delay). Finally, we note that the purpose of the penalty is to provide plan administrators with an incentive to timely respond to requests for documents. See Davis, 97 F.3d at 738.

## III.

We empathize with Kerr's plight, and we certainly do not like the notion that a plan administrator can wrongfully withhold pension plan information or funds to which a participant is lawfully entitled without penalty. However, Congress provided in ERISA a comprehensive scheme for dealing with pension plans, and it provided a carefully integrated civil enforcement regime in section 1132 for breaches of fiduciary duties related to ERISA plans. The Supreme Court has interpreted ERISA's remedial scheme and we are bound by that interpretation. Therefore, we affirm the district court's order denying Kerr relief for breach of fiduciary duties related to the delay in payment of his pension account. We reverse and remand the issue of statutory penalties for failure to timely provide requested plan documents, with instructions that the district court consider awarding a penalty consistent with 29 U.S.C. § 1132(c).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.