*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0348P (6th Cir.)
File Name: 01a0348p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

KENNETH G. HELFRICH,
　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

PNC BANK, KENTUCKY, INC.,
　　　　　*Defendant-Appellant.*

No. 00-5148

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00734—Charles R. Simpson, III, Chief District
Judge.

Argued: August 9, 2001

Decided and Filed: October 1, 2001

Before: KRUPANSKY, SUHRHEINRICH and SILER,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** A. Michelle Turner, WYATT, TARRANT &
COMBS, Louisville, Kentucky, for Appellant. Kenneth L.
Sales, SALES, TILLMAN & WALBAUM, Louisville,
Kentucky, for Appellee. **ON BRIEF:** A. Michelle Turner,
WYATT, TARRANT & COMBS, Louisville, Kentucky, for
Appellant. Kenneth L. Sales, Russell D. Dougherty, SALES,

TILLMAN & WALBAUM, Louisville, Kentucky, for Appellee.

————————————

**OPINION**

————————————

KRUPANSKY, Circuit Judge.  Defendant-Appellant PNC Bank, Inc. ("PNC Bank") has challenged, by interlocutory appeal, the district court's denial of its motion to dismiss this action, by which PNC Bank has contended that the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") does not authorize the relief requested by Plaintiff-Appellee Kenneth J. Helfrich ("Helfrich").

Helfrich participated in an employer-sponsored 401(k)[1] profit sharing plan.  PNC Bank administered that plan for Bulk Distribution Centers, Helfrich's employer.  The Basic Plan Document required PNC Bank as Trustee/Custodian to make "distributions from the Fund in accordance with written instructions received from an authorized representative of the Employer."  At all times relevant to the subject controversy, Donald L. Stump ("Stump"), President of Bulk Distribution Centers, was the "individual authorized to issue instructions to the Trustee/Custodian."

On April 30, 1996, Helfrich instructed Brenda Higgins ("Higgins"), Vice President at PNC Bank for Employee Benefit Administration, to "effect a direct rollover" of the bulk of his assets (roughly $700,000) into specified mutual funds and to distribute to Helfrich a portion of the remaining funds (roughly $61,000).  On May 1, 1996, Donald Stump authorized Brenda Higgins to roll over "$700,000 from Mr. Helfrich's equity fund to the mutual fund accounts he specified in his Distribution Response Form."

---

[1]The Internal Revenue Code accords special tax treatment to contributions to plans that qualify under 26 U.S.C. § 401(k).

ERISA does not permit plan beneficiaries to claim money damages from plan fiduciaries. Confronted with this obstacle to recovery of his loss, Helfrich denominated his requested relief as "restitution" while measuring that relief with reference to his losses rather than PNC Bank's gains. That measure is the hallmark of money damages. Because the Supreme Court has specifically disallowed money damages as "appropriate equitable relief" under ERISA, the district court's decision to deny PNC Bank's motion to dismiss is **REVERSED** and this cause is **REMANDED** with instructions to dismiss this matter with prejudice.

On May 15, 1996, Higgins, Stump, and Helfrich met to discuss Helfrich's requested actions. Stump has averred, via sworn affidavit, that

[1]. During this meeting Ms. Higgins agreed that:

(a) because of the significant increase in the market value of the PNC-Compass mutual funds Mr. Helfrich's 401(k) pension plan funds were invested in, he could rollover $700,000 without affecting the pre-1987 contribution balance. If the [net asset value] of these funds declined significantly prior between May 15, 1996 and June 30, 1996 the rollover amount would have to be reduced.

(b) *to effect the rollover quickly* without losing 01/01-6/30/96 earnings and to avoid delays in effecting the rollover which could be expected after Lincoln[2] becomes custodian, PNC would effect the rollover after 6/30/96 but *before any funds were forwarded to Lincoln*.

[2]. Ms. Higgins had previously requested a letter from me authorizing this rollover which I provided on May 1, 1996.

[3]. Mr. Helfrich asked Ms. Higgins if there was anything else he, as participant, or me, as Plan Administrator, needed to do to make sure this rollover occurred as outlined above. Ms. Higgins said nothing else was required. She further stated that since she had my authorization letter and the actuaries' fax showing the pre-1987 contribution she would effect the rollover as described in [1](b) above.

---

[2]As discussed *infra*, on July 1, 1996, Stump transferred administration of the profit-sharing plan to Lincoln National Life Insurance Company ("Lincoln").

(emphasis added and paragraph numbers changed).

On June 28, 1996, Stump notified Higgins by way of fax that

> effective July 1, 1996, Bulk Distribution Centers will be transferring its 401(k) profit sharing plan to a prototype plan sponsored by Lincoln National Life Insurance Company ["Lincoln"].    Lincoln will become the custodian and investment manager for the plan.  Bulk Distribution Centers, therefore, is cancelling its participation in the prototype cash or deferred profit sharing plan and trust sponsored by PNC Bank effective July 1, 1996.

On July 11, 1996, as per the instructions contained in Stump's letter dated June 28, 1996, Higgins liquidated and transferred plan assets to Lincoln.  However, Higgins failed to follow Helfrich's instructions as to rolling over his plan assets into specified mutual funds before transferring the balance of the funds to Lincoln.  Lincoln placed the monies it received into money market funds.

On December 3, 1998, Helfrich filed a complaint in federal district court, alleging that PNC breached its fiduciary duty towards him in violation of ERISA.  Helfrich demanded "[a]ppropriate equitable relief including, but not limited to: restitution, disgorgement, injunctive relief, and/or monetary damages."  In his complaint, Helfrich contended that PNC Bank's error caused him to suffer a significant economic loss because Lincoln's investment of Helfrich's plan assets appreciated at a much slower rate than did Helfrich's specified mutual funds.  Helfrich maintained that he was therefore entitled to the difference between the amount he would have earned if PNC Bank had completed the requested rollover and the amount he in fact earned as a result of his monies remaining in the Lincoln-controlled money market fund.

On April 13, 1999, PNC moved to dismiss the case, arguing that Helfrich's requested remedy was not equitable and

applicability of money damages in an action brought pursuant to Section 1132(a)(3).  *See Mertens*, 508 U.S. at 255.

Helfrich has observed that, under the law of trusts, a traditional court of equity could award money damages in a lawsuit for a trustee's breach of fiduciary duty.  *See Restatement (Second) of Trusts*, § 205, comment a (1959) (explaining that a beneficiary is entitled to a remedy "which will put him in the position in which he would have been if the trustee had not committed the breach of trust.").  Helfrich has argued that "appropriate equitable relief" must therefore include his measure of restitution.  However, the *Mertens* court rejected that argument as well.  *See Mertens*, 508 U.S. at 256 ("[L]imiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief not at all. We will not read the statute to render the modifier superfluous.").[5]

---

[5] The Second Circuit in *Strom v. Goldman Sachs, Inc.*, 202 F.3d 138 (2d Cir. 1999), reached the opposite conclusion as to the availability of Helfrich's requested relief under ERISA.  In *Strom*, the plaintiff's husband had applied for additional life insurance through his employer.  *Id.* at 140.  The employer failed to forward the application to its insurer in a timely manner and, as a result, plaintiff did not receive benefits under that policy when her husband died.  *Id.* at 141.  The Second Circuit awarded recovery of the additional life insurance to the plaintiff from the employer, finding that Congress intended that Section 1132(a)(3) should "eliminate the *direct* economic effect," *id.* at 148 (emphasis added), of a violation of ERISA.  However, the instant court finds no support for a distinction between "direct" and "indirect" damages in determining whether relief is available under Section 1132(a)(3) and *Mertens*.

The Second Circuit then analogized recovery of the additional life insurance to recovery of backpay in an action challenging unlawful employment discrimination; the Supreme Court has already characterized such relief as equitable in the context of an action brought pursuant to the National Labor Relations Act.  *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975).  That contention is unpersuasive.  When it illegally discharges one of its employees, the employer retains wages it would ordinarily have had to pay if it had not committed the illegal act.  In the case before this court (and in *Strom* as well), the defendant has not retained any money which could be "restored" to the plaintiff.

that time period");[4] *see also Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (indicating that restitution involves "restoring the status quo and ordering the return of that which rightfully belongs" to another); DOBBS, LAW OF REMEDIES, at 555 (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.").

In support of the proposition that ERISA authorizes his requested relief, Helfrich has relied principally on a pre-*Mertens* decision by this circuit, *Warren v. Society National Bank*, 905 F.2d 975 (6th Cir. 1990). The *Warren* court concluded that "a beneficiary [in an action brought pursuant to Section 1132(a)(3)] is entitled to a remedy that will put him in the position he would have been in if the fiduciary had not committed a breach of trust, and that such a remedy includes monetary damages." *Warren*, 905 F.2d at 982. Helfrich's reliance on *Warren* is misplaced, however, because that case was abrogated by *Mertens*. *See Fraser v. Lintas: Campbell-Ewald*, 56 F.3d 722, 724 (6th Cir.) ("In our view, *Mertens* effectively overrules *Warren*."), *cert. denied*, 516 U.S. 975 (1995). As noted earlier, the *Mertens* Court rejected the

---

[4] Helfrich has relied on *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994), for the proposition that his proffered measure of restitution is appropriate under ERISA. In *Howe*, the Eighth Circuit permitted recovery by the plaintiffs of payments they would have received had they not been wrongfully induced by their employer to exit the employee benefit plan. *See Howe*, 36 F.3d at 756-57. The Eighth Circuit characterized such relief as restitution. *See id.* However, in *Howe*, the Eighth Circuit determined that the employees were entitled to an injunction reinstating them to the plan. *Id.* at 756. As the Eighth Circuit later noted in *Kerr*, it allowed recovery of the payments as an incident of the injunction. *See Kerr*, 184 F.3d at 944 ("[O]ur 'restitutionary' award was necessary as a corollary to the injunction–restoring plaintiffs 'to the position they would have occupied [as participants in the plan] if the misrepresentation ... had never occurred." (quoting *Howe*, 36 F.3d at 756.)) In the matter before the court, the district court did not issue an injunction, nor would an injunction have been appropriate. Helfrich's reliance on *Howe* is therefore unavailing.

---

therefore not authorized by ERISA. On June 18, 1999, Helfrich filed his response, contending that he had requested restitution, which is authorized by ERISA.

On October 5, 1999, the district court denied PNC Bank's motion to dismiss in part,[3] finding that

Helfrich's claim under § 1132(a)(3) is in the nature of restitution–he seeks to be placed in the position he would have been had not PNC allegedly failed to follow his directions with respect to his plan benefits. The court cannot turn back the hands of time should he prevail on his claim. However, the court can seek to fashion an award to duplicate the benefit as he would have obtained had his directions been followed.

*Helfrich v. PNC Bank*, No. 98-734, slip op. at 15 (W.D. Ky. Oct. 5, 1999).

On December 22, 1999, the district court amended its October 5, 1999 order, noting the legal importance of the issue resolved by its previous order, and certifying its immediate interlocutory appeal. *Helfrich v. PNC Bank*, No. 98-374 (W.D. Ky. Dec. 22, 1999). PNC Bank then moved a separate panel of this court to permit immediate appeal. On February 11, 2000, this court granted the motion. *Helfrich v. PNC Bank*, No.00-5148 (6th Cir. Feb. 11, 2000). On February 14, 2000, PNC Bank then filed its timely notice of appeal.

This court reviews *de novo* the district court's denial of a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. *See Michigan Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 865 (6th Cir. 2000). In order to survive a motion to

---

[3] In its motion to dismiss, PNC Bank had also moved to dismiss the other two counts in Helfrich's complaint. The district court granted PNC Bank's motion as to these counts and dismissed them with prejudice. None of those counts are relevant to this appeal.

dismiss, the plaintiff's complaint must allege facts, which if proved, would entitle the claimant to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

ERISA permits plan beneficiaries, plan administrators, and the Secretary of Labor to enforce its provisions. *See* 29 U.S.C. § 1132(a)(1)-(6). However, ERISA distinguishes between those parties in the types of relief it makes available to them. Acting on behalf of a benefit plan, the Secretary of Labor and the plan administrator are entitled to seek the full gamut of legal and equitable relief. *See id.* In contrast, ERISA restricts plan *beneficiaries* to *equitable relief* with no recourse to money damages. *See* 28 U.S.C. § 1132(a)(3); *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993).

In particular, ERISA provides that a civil action may be brought

> (3) by a participant, *beneficiary*, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

The *Mertens* Court emphasized that money damages, as traditionally understood, are not encompassed within the phrase "appropriate equitable relief:"

> Petitioners maintain that the object of their suit is "appropriate *equitable* relief" under § 502(a)(3) (emphasis added). They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution. ... Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*–monetary relief for all losses their plan sustained as a result of the alleged breach of

fiduciary duties. Money damages are, of course, the classic form of *legal* relief.

*Mertens*, 508 U.S. at 255.

Nevertheless, in disallowing money damages, the *Mertens* court specifically authorized restitutionary relief. *See id.* However, Helfrich's requested remedy–that PNC Bank should compensate him for the losses he suffered because PNC Bank failed to transfer his assets to higher performing mutual funds–constitutes money damages, not restitution. Had PNC Bank invested his money for its own benefit in a separate unauthorized, but better performing, account, PNC Bank would be liable to Helfrich in restitution for the principal and its ill-begotten gain. Helfrich's principal has, however, been restored and there is no allegation that PNC Bank profited by its improper maneuver. As such, there is nothing to *restore* to Helfrich, and therefore no basis for restitutionary relief.

As the Eighth Circuit has noted, when confronted with a similar case:

> [t]he basic distinction between equitable restitution and compensation focuses on the genesis of the award sought by the plaintiff. A restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him.

*Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999) (denying plaintiff's requested "monetary award for the difference between the return that he could have earned had he had control of the funds during the three-and-a-half years that [the defendant] wrongfully withheld payment of the 401(k) plan funds and the return that the plan earned during