# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4063/03-2084

_____

Linda Brown,                                    *
                                                *
      Plaintiff-Appellee,                   *
                                                *  Appeal from the United States
    v.                                        *  District Court for the Western
                                                *  District of Missouri.
Aventis Pharmaceuticals, Inc.;                  *
Helen Hefner, Plan Administrator                *
                                                *
      Defendants-Appellants.                *

_____

Submitted: June 13, 2003
Filed:  September 9, 2003

_____

Before  MELLOY, BEAM and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

      Defendants-Appellants Aventis Pharmaceuticals and Helen Hefner appeal the orders of the district court[1] requiring them to pay the plaintiff, Linda Brown, $8030 in statutory penalties for a violation of COBRA notification, $11,550 in statutory penalties under ERISA for failure to supply summary plan documents after a written request, and a certificate of life insurance for $39,000 minus the amount of premiums

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

that would have been incurred by the plaintiff in exercising her life insurance conversion rights. We affirm.

## I.

Linda Sue Brown began working for one of the defendant's predecessor companies in 1986. She continued to work for the company until 2000 when she received a 180-day period of disability leave. When Brown was unable to return to work at the end of this period she was terminated. Brown's termination letter was sent on November 15, 2000. It informed her that the effective date of her termination was October 29, 2000. The letter also indicated that Brown would receive further information regarding the impact of termination on her benefits.

Brown's benefits as an Aventis employee included health, dental, and life insurance coverage. Employees also had the right to convert their life insurance benefits upon leaving the company. This conversion right allowed employees to maintain their current level of coverage without having to provide additional evidence of insurability. This is significant because Brown has health problems making it difficult to get insurance from a new provider. To qualify for conversion and maintain the life insurance benefits, an employee must fill out the necessary paperwork and pay a fee within thirty-one days of termination.

This process of conversion and the deadlines involved are explained in a Summary Plan Description (SPD), contained within Aventis' Employee Yearbook. Aventis provided Brown with an Employee Yearbook, but Brown did not possess it at the time of her termination. She had left it in her employee locker when she went on disability leave. While she was on leave, the company's maintenance staff cleaned out her locker and did not return the contents to her.

2

When Brown did not receive the information promised in her termination letter, she, on at least two occasions, called representatives in Aventis' Human Resources Department, who assured her that the information would be forthcoming. When the information had not arrived nearly two months after her termination, Brown hired an attorney in an attempt to obtain it.

Brown's attorney mailed two letters requesting this information on January 23, 2001 and February 7, 2001. Although these letters did not specifically ask for a "summary plan description," the district court found them to constitute a request for the SPD based on their language requesting information about "all benefits." Brown received COBRA information and insurance conversion forms, but not a SPD, on February 23, 2001. Upon receiving these forms, Brown attempted to convert her life insurance coverage. This application and the subsequent appeal were denied. UNUM, the insurance provider, is not a party to this action.

After a bench trial, Brown was awarded $8030, the maximum statutory damages allowed, for Aventis' failure to provide COBRA notification within the required time period. Brown also received $11,550 in civil penalties authorized by ERISA for Aventis' failure to supply a SPD upon receipt of Brown's written request. Aventis was additionally required to provide Brown with a life insurance certificate for $39,000–the amount of coverage Brown was unable to convert–minus any costs Brown would have incurred in the process of conversion.

II.

This court reviews the decision of the trial court to grant or deny civil penalties under ERISA for abuse of discretion. Wilson v. Moog Auto., Inc. Pension Plan, 193 F.3d 1004, 1010 (8th Cir. 1999). Aventis argues that it was an abuse of discretion to

3

award Brown the maximum damages allowed because (1) there was no evidence of bad faith and (2) Brown suffered no harm as a result of receiving her COBRA notification late because Aventis provided her health benefits retroactively.

Although an "employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty," Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002), "neither [a defendant's] good faith nor the absence of actual injury to [the plaintiff] precludes the award of a statutory penalty." Id. at 703. There is no evidence that Aventis' failure to provide the necessary information was anything other than an administrative error–ostensibly caused by the company moving its offices during this time period. Even so, Aventis' failure to act for a period of several months, despite Brown's repeated phone calls, could be considered bad faith. Additionally, although Brown did not suffer any loss of health benefits due to the delay,[2] she was forced to invest time, effort, and money in hiring an attorney to gain access to information that she was legally entitled to. Thus it was not an abuse of discretion for the district court to award maximum damages.

III.

Aventis also contends that it was an abuse of discretion to award the plaintiff statutory penalties under 29 U.S.C. § 1132(c)(1)(B) for Aventis' failure to provide a SPD upon written request as required by 29 U.S.C. § 1024(b)(4). The first rationale for Aventis' claim is that Brown did not plead or contend that she had made a written demand for the SPD under 29 U.S.C. § 1024(b)(4) nor that she was seeking civil penalties under 29 U.S.C. § 1132(c)(1)(B). Aventis also argues that these claims were not tried with the consent of the parties. However, Brown's first amended

_____

[2] In March 2001, after the second attorney letter, Aventis acknowledged its err in not providing COBRA information. It allowed Ms. Brown to convert her health insurance and make it retroactive to the date of termination.

complaint (Paragraph 20) does reference civil penalties available under ERISA § 1132(c)(1). Also, in response to Aventis' summary judgment motion, Brown specifically raised issues of fact regarding Aventis' failure to provide the Employee Yearbook which contained the SPD. This was adequate to put the defense on notice that Brown sought damages for the failure to provide the SPD. Furthermore, Aventis never raised any objections in the district court regarding the introduction of evidence about the SPD. "The appellate court will not entertain such objection [regarding the admission of evidence] on appeal for the first time." United States v. Price, 464 F.2d 1217, 1219 (8th Cir. 1972).

Aventis' second argument against civil penalties for failure to provide the SPD is that an employer is not required to provide information about life insurance benefits upon termination as long as it previously provided a SPD to the employee. While this principle is generally true, it does not apply in this case because Aventis prevented Brown from accessing the SPD it had given her. While Brown was on leave, the company's maintenance staff removed the SPD from her employee locker and did not return it to her. No additional copy was provided.

Lastly, Aventis cites Fisher v. Metropolitan Life Ins. Co. in an attempt to show that Brown's written request was not specific enough to put Aventis on notice to provide a SPD. 895 F.2d 1073, 1077 (5th Cir. 1990). Fisher was denied statutory damages because his written request for information was deemed insufficient. Fisher's request was

> nothing more than a scribbled note at the bottom of a Social Security award certificate requesting, not Plan documents, but rather "a copy of the policies covering my contract for salary continuation." . . . Nothing in either the request or the response indicates that Metropolitan knew or should have known that Fisher had requested a copy of any document related to [the company benefits] plan.

5

Id. Brown's request is distinguished from Fisher's in two key respects. First, it was a formal letter, sent to two separate individuals in the company. Second, although Brown's letter did request specific information regarding COBRA, it also requested "notice of termination of any of her other benefits." The district court issued a finding of fact that this constituted a request for the SPD. As this finding was not a clear error, it was not an abuse of discretion for the district court to award civil penalties under 1132(c).

IV.

Whether the order to provide a certificate of life insurance is an appropriate equitable remedy under ERISA is primarily a question of law reviewed de novo. See Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 942 (8th Cir. 1999) (finding that an appeal as to whether lost interest is an equitable remedy involved primarily issues of law). To the extent that the decision rests on any underlying facts, we review the district court's findings of fact for clear error. Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1054 (8th Cir. 1997) (en banc).

Brown's effective date of termination was October 29, 2000. Thus she had to apply for conversion of her life insurance by November, 29, 2000 (within thirty-one days).[3] Aventis argues that because the time period for conversion expired before Brown's written request for information on January 23, 2000, its failure to provide the information did not "cause" Brown to lose her benefits. This argument is flawed.

_____

[3] Ms. Brown actually had only 14 days to convert because she was not notified of the termination until November 15, 2000, with a retroactive termination date of October 29, 2000.

Brown clearly would have applied to convert her benefits if she had been aware of the procedures and deadlines for doing so. She did apply for conversion after Aventis provided the necessary forms, and there is no evidence to indicate she would have acted differently if the forms were provided earlier. Additionally, Brown did not receive notice that she was fired until November 15, 2000. Thus, even if she had filed a written request for information as soon as she learned of her termination, she would not have received the necessary information and forms within thirty-one days of termination–assuming Aventis would have taken thirty-one days to get her the information as they did when they received the written request from Brown's attorney in January of 2001. In fact, under Aventis' logic, if it is not required to provide the necessary conversion forms until after receiving a written request, it would be practically impossible for terminated employees to convert their life insurance benefits within the necessary time period.

Brown also reasonably believed she would receive information about her benefits without having to take additional action. Her termination letter states: "You will receive a packet of information describing the effect of termination on all of your benefits." It is unfair for Aventis to lead an employee to believe she would be provided important information and then claim that the cause of her inability to exercise her rights was her failure to request that information. Furthermore, Aventis concedes that Brown did not get her insurance portability and conversion forms "due to an error made by Aventis Pharmaceuticals." Trial Exhibit # 16, Appendix Volume II, (July 12, 2001 Letter from Aventis Benefits Analyst to UNUM Insurance Company).

Aventis argues that it had no duty to provide Brown with the necessary conversion information because the information was contained in the SPD. Castello v. Gamache, 593 F.2d 358, 361 (8th Cir. 1979) ("[A]n insured is presumed to have constructive knowledge of the terms of a group policy."). This case is distinguishable from Castello, however, because in that case there was no evidence that the employee

7

had requested a copy of the SPD. Here, the district court made a finding of fact that such a request existed. Until Brown was terminated, she had no reason to memorize the procedures required to convert her benefits. Once the need to learn these procedures arose, she contacted Aventis, but was unsuccessful in her attempts to have her copy of the SPD replaced. Putting important information in a SPD *may* fulfill a company's duty to inform its employees, but it does not meet this burden when an employee does not have meaningful access to that document.

Although Aventis is not a life insurance company and thus cannot directly provide Brown with coverage, the district court's order can be read to require Aventis to purchase insurance from an outside provider and present proof of such insurance to Brown. Aventis has already demonstrated the feasability of this course of action by presenting Brown with a $10,000 certificate of life insurance as a retiree of the company. The district court subtracted this $10,000 in coverage from Brown's previous coverage level of $49,000 to arrive at $39,000 as the value of the certificate of life insurance that Aventis must provide. Aventis argues, however, that this remedy goes beyond the limitation of ERISA equitable remedies.

The key issue is whether the restoration of the life insurance coverage is "restitution," which is allowed, or "compensatory damages," which are not allowed. Aventis cites Kerr for the proposition that a "restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands." 184 F.3d at 944. We believe the requirement in this case is consistent with the holding in Kerr where we stated:

> Equitable relief clearly includes injunctive and declaratory relief. We held in Howe that . . . the employees in question . . . were entitled to an injunctive order reinstating them as members of the plan. . . . The monetary portion of our award reflected the benefits that the employees would have earned if they had remained plan participants. The injunction did not provide retrospective relief for the period in which the

employees were not covered under the plan. Thus, our "restitutionary" award was necessary as a corollary to the injunction–restoring the plaintiffs "to the position they would have occupied [as participants in the plan] if the misrepresentations ... had never occurred."

Id. (last two alterations in original) (internal citations omitted). This statement demonstrates that the court is concerned not only with the technical differences between the types of awards, but also with restoring plaintiffs to the position they were in before the defendants' actions. Here, as in Kerr, if not for the improper actions of the defendant, the plaintiff would have continued to enjoy the benefits of the plan.

Additionally, the district court did not enter an award for monetary damages. It ordered Aventis to procure a life insurance certificate. The value of this life insurance certificate was reduced by the costs Brown would have incurred during conversion. Brown is not receiving compensation for any past or future losses or expenditures. The order simply restores her benefits to the level they would have maintained if not for Aventis' failure to provide crucial information. Thus the order is more similar to Howe v. Varity Corp., 36 F.3d 746, 756 (8th Cir. 1994) (affirming the judgment of the lower court and modifying the remedy to include injunctive reinstatement of benefits), than Novak v. Anderson Corp., 962 F.2d 757, 759 (8th Cir. 1992) (denying compensatory damages when a failure to provide notice of a "roll-over" provision in a pension plan resulted in an increased tax liability). Aventis argues that because it must purchase a policy to give to Brown, the award is necessarily a compensatory award for "money damages" and is thus prohibited. This is not the case, as noted in a different context by the Supreme Court, Bowen v. Massachusetts, 487 U.S. 879, 893-95 (1988), and, in an ERISA action, by this court. Howe, 36 F.3d at 756 ("The relief awarded includes payments of money that plaintiffs would have received if they had remained members of the M-F Plan, but we do not think these payments can properly be characterized as 'damages,' and thus unavailable under Section 502(a)(3). Rather, we view the payments as restitution.").

9

For the above reasons, the award of the life insurance certificate is properly characterized as equitable relief and is affirmed.

V.

Subsequent to oral argument, the panel agreed to take up and consolidate the issue of attorney's fees in this appeal. The award of attorney fees under ERISA is reviewed for abuse of discretion. Geissal v. Moore Med. Corp., Nos. 02-2255 & 02-2256, 2003 WL 21755925, at *7 (8th Cir. July 31, 2003). The award of fees in ERISA cases is discretionary and there is no presumption favoring the award of fees to either party. Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 971-2 (8th Cir. 2002) (en banc), cert. denied, 123 S. Ct. 967 (2003).

In determining whether to award fees, courts should consider the five factors this Court set out in Lawrence v. Westerhaus:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

749 F.2d 494, 496 (8th Cir. 1984). The district court analyzed each of these factors separately and found that, on the whole, they weighed in favor of the plaintiff. The court awarded Brown $23,471.63 in attorney fees, representing a lodestar fee of

10

$31,295.50 less twenty-five percent to eliminate any duplication of efforts or redundancy. The court's methods in awarding fees were proper. Thus, the award for attorney fees was not an abuse of discretion. We affirm.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT