# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-2162/3491/3550

_____

| | | |
|---|---|---|
| Donna S. Sheehan, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| Guardian Life Insurance | * | |
| Company, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: April 15, 2004
Filed: June 18, 2004

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MAGNUSON,[1] District
Judge.

_____

MAGNUSON, District Judge.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

Appellant The Guardian Life Insurance Company of America ("Guardian") appeals from the District Court's[2] determination, after a bench trial, to reverse Guardian's decision to deny insurance benefits to Appellee Donna S. Sheehan ("Mrs. Sheehan"). Mrs. Sheehan cross-appeals, arguing that the District Court improperly calculated the prejudgment interest she was due and should have applied prejudgment interest from the date of loss. We affirm, with the exception of the relevant dates for the calculation of prejudgment interest.

**BACKGROUND**

Mrs. Sheehan is the widow of Tom Sheehan, who died on April 17, 1997. At the time of his death, he was employed by the Stiles Machinery Company ("Stiles") in Grand Rapids, Michigan. Stiles provided both life insurance and accidental death benefits to Mr. Sheehan through Guardian. After Mr. Sheehan's death, Mrs. Sheehan, through Stiles, applied to Guardian for both life insurance proceeds and accidental death benefits. Guardian paid her $100,000 in life insurance, but ultimately denied her application for accidental death benefits. After the final denial of accidental death benefits, Mrs. Sheehan brought this lawsuit claiming that Guardian breached its duties to her under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

The cause of Mr. Sheehan's death was listed on the death certificate as acute morphine intoxication. The coroner concluded that Mr. Sheehan had accidentally ingested morphine, and thus listed the cause of death as an accident.

Guardian's initial review of Mrs. Sheehan's application for accidental death benefits concluded that such benefits should be paid. Loraine Hays, a benefit analyst

---

[2] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

and claims approver at Guardian, stopped payment on the claim because a controlled substance was involved. She forwarded the claim file to the Medical Department, which in turn forwarded the file to another benefit analyst, Joel Grossman. Mr. Grossman sent a "delay letter" to Stiles, but not to Mrs. Sheehan, indicating that a decision on the claim had been delayed. Mr. Grossman then proceeded to investigate the claim. He reviewed a police report, the report from an investigator hired by Guardian, the coroner's report, and the death certificate. All of these reports concluded that Mr. Sheehan's death was an accident. Nonetheless, Mr. Grossman sent a letter to Mrs. Sheehan on Sept. 22, 1997, denying the claim.

In the letter, Mr. Grossman purported to quote the controlled substance exclusion from Stiles's accidental death policy. The language he quoted provided that Guardian would not "pay for loss of life caused directly or indirectly by your voluntary use of a controlled substance, unless: (1) it was prescribed for you by a doctor, and (2) it was used as prescribed." This language does not appear in Stiles's accidental death policy. Rather, the controlled substance language in Stiles's policy provides only that the Guardian would not "pay for loss of life which is the result of your being under the influence of any narcotic, unless administered under the advice of a doctor." Mr. Grossman's letter states that the reason for denial of the claim was that the death was not accidental, despite the fact that none of those charged with investigating Mr. Sheehan's death had concluded that the death was not accidental.

Mrs. Sheehan's lawyer, Mr. O'Keefe, then wrote to Guardian and pointed out that the denial letter relied on the wrong policy language. Guardian responded that it was looking into the matter. Nearly two months later, Mr. O'Keefe called Mr. Grossman and requested a copy of the claim file. Mr. Grossman did not send a copy of the claim file. Two weeks later, Mrs. Sheehan received a letter from Deborah Connolly, a Second Vice President Insurance Operations Counsel at Guardian. This letter denied Mrs. Sheehan's appeal of the initial denial of benefits.

Guardian's review process contains a procedure for a denied claim file to be transferred to a so-called "compliance team." This team, made up of six individuals, is charged with ensuring that every claim denial complies with federal law. Mrs. Sheehan's claim was not forwarded to a compliance team. Instead, after Mr. Grossman's decision to deny benefits and Mrs. Sheehan's appeal of that decision, the claim file was sent to the Legal Department, where Ms. Connolly ultimately received it.

After Ms. Connolly received the file, she attempted to ascertain how Mr. Sheehan came to be in possession of the morphine that killed him. According to Ms. Connolly, information about how Mr. Sheehan got the morphine was essential to her evaluation of the claim. She asked Mr. Grossman to contact Guardian's investigators and ask them to make this determination. Guardian ultimately asked both the original investigators and a new investigation firm to find out the source of the morphine. At no time, however, was Mrs. Sheehan informed that Guardian was investigating the source of the morphine. Indeed, Guardian did not interview Mrs. Sheehan at all as to the cause of Mr. Sheehan's death or any other matter. One of Guardian's investigators determined that the death was an accident. The other investigator informed Guardian that it could not determine the source of the morphine that killed Mr. Sheehan. Despite receiving no answer to her question of how Mr. Sheehan got the morphine, and despite receiving no indication that Mr. Sheehan's death was not an accident, Ms. Connolly denied Mrs. Sheehan's appeal.

At the time of his death, Mr. Sheehan was suffering from neck pain from an injury. It appears that Mr. Sheehan had become addicted to painkillers, and in fact his physician terminated the physician/patient relationship with Mr. Sheehan only days before Mr. Sheehan's death, due to Mr. Sheehan's narcotic-seeking habits. Neither of the two physicians treating Mr. Sheehan had ever prescribed him morphine. After Guardian's initial denial of Mrs. Sheehan's claim, Mrs. Sheehan discovered morphine tablets in an ALEVE bottle in her home. The ALEVE bottle

had been given to Mr. Sheehan on the day of his death by a hospice patient for whom Mr. Sheehan did errands. Mrs. Sheehan recalls Mr. Sheehan emerging from the hospice patient's home with the ALEVE bottle, saying that the patient had recommended that medication in the bottle to relieve Mr. Sheehan's pain. Guardian claims that it did not discover any information about the morphine pills in the ALEVE bottle until this lawsuit, although Mr. O'Keefe sent Ms. Connolly a registered letter about the morphine in October 1999.

The District Court found that Guardian's two denial-of-claim letters did not comply either with Guardian's policies or with ERISA. Both ERISA and Guardian's policies require that a denial letter inform the insured of: (1) the specific reason(s) for the denial; (2) the specific policy language on which the denial was based; (3) any additional material or information necessary to change the decision and why that material or information is necessary; and (4) an explanation of the claims review/appeal procedure. Mr. Grossman's letter quoted the wrong policy language, did not tell Mrs. Sheehan of any additional material or information that could change the decision, and did not explain the appeals procedure. Similarly, Ms. Connolly's letter did not tell Mrs. Sheehan the specific evidence on which the denial was based or what evidence Mrs. Sheehan could supply that might affect the decision.

The District Court determined that there were serious procedural irregularities in Guardian's processing of Mrs. Sheehan's claim, and that these irregularities caused a serious breach of Guardian's fiduciary duties. The court thus afforded the decision little deference, and ultimately determined that the decision to deny Mrs. Sheehan benefits was erroneous.

**STANDARD OF REVIEW**

The District Court's determinations at issue in this appeal were made after a bench trial. Thus, as to the factual findings the District Court made, this Court

reviews only for clear error. Fed. R. Civ. P. 52(a). The District Court's conclusions of law, such as the appropriate standard of review to apply to the plan administrator's decision, are reviewed de novo. Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1196 (8th Cir. 2002).

**DISCUSSION**

### A. Standard of Review for Plan Administrator's Decision

As the District Court found, a challenge to the denial of benefits should be reviewed de novo, unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 948, 103 L. Ed. 2d 80 (1989). In this case, there appears to be no dispute that the plan gives Guardian such discretionary authority. Thus, Guardian's decision is reviewed for an abuse of discretion. Tillery, 280 F.3d at 1197. If, however, Mrs. Sheehan presented "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty," the District Court could apply a less-deferential standard of review. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). In this case, as noted above, the District Court determined that there were serious procedural irregularities that caused a breach of Guardian's fiduciary duty, and thus afforded Guardian's decision little deference.

The District Court did not specify the standard of review it used when evaluating Guardian's decision to deny Mrs. Sheehan accidental death benefits. However, the District Court stated that it would apply a "significantly less deferential standard" to Guardian's decision.

-6-

The District Court's decision to apply a less deferential standard of review was correct. There are many procedural irregularities in this case, including the initial failure to send the file to the compliance team, Mr. Grossman's reliance on the wrong policy language, and Ms. Connolly's decision to deny the claim without receiving the information regarding the source of the morphine that she claimed she needed to evaluate the claim. Those procedural irregularities raise "serious doubts as to whether the result reached was the product of an arbitrary decision." <u>Buttram v. Cent. States S.E. & S.W. Areas Health & Welfare Fund</u>, 76 F.3d 896, 900 (8th Cir. 1996). Thus, the District Court correctly applied a less deferential standard of review.

### B. Guardian's Decision to Deny Benefits

Using a less deferential standard of review, the District Court determined that Guardian's decision was in error. The Court noted that all of the evidence in the record before Guardian at the time of its decisions in this matter indicated that Mr. Sheehan's death was an accident. Further, under the language of the plan, accidental death benefits are not payable only if the death is caused by the insured being under the influence of a controlled substance. This provision is intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance. Guardian attempts to paint Mr. Sheehan as a drug abuser who knew that he was taking morphine. However, all of the evidence indicated that Mr. Sheehan accidentally ingested a lethal dose of morphine. The District Court was correct in its determination that Guardian's decision to deny benefits was in error.

### C. Amount of Benefits

Guardian next contends that the District Court's determination that Guardian owed Mrs. Sheehan $190,000 was erroneous. The accidental death benefit provided in the policy is twice the deceased's annual earnings. According to Guardian, when Stiles filled out the claim form, Stiles requested only $100,000 in benefits. There is

no dispute that Mr. Sheehan earned $50,000 in annual salary and $45,000 in guaranteed annual commissions. The claim form asks only for the deceased's annual salary, which Stiles listed as $50,000.

Because the plan is clear that a beneficiary is entitled to 200% of the deceased's annual earnings, the District Court concluded that Mrs. Sheehan should receive $190,000, plus interest. This determination is not clearly erroneous. Guardian is responsible for the inconsistency between its claim form and the plan language. The District Court's decision to award Mrs. Sheehan $190,000 is correct.

## D. Attorneys' Fees

The District Court has discretion to award attorneys' fees under ERISA. Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir. 1984). When considering whether to award such fees, this Court has set forth general guidelines for district courts to follow, including the five factors set forth in Westerhaus. Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002). These factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal qeustion [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

Westerhaus, 749 F.2d at 496 (alteration in original). This Court will not overturn a District Court's decision regarding attorneys' fees absent an abuse of discretion. Martin, 299 F.3d at 969.

In this case, the District Court found that all of the factors save one weighed in favor of an award of fees. The only factor that did not weigh in favor of an award was the fourth factor, whether the action sought to benefit all participants in the plan or to resolve a significant legal question. In particular, the District Court again noted that Guardian did not cooperate with Mrs. Sheehan during the application process, ignored her requests for information, and failed to inform her about the information it was seeking regarding her husband's death.

The District Court did not abuse its discretion in awarding fees in this matter. Although reasonable minds may differ as to whether Guardian acted in bad faith, the District Court was in a better position to judge this factor, having heard testimony from Guardian's witnesses. The District Court's decision to award Mrs. Sheehan her fees is affirmed.

### E.    Prejudgment Interest

The issue of prejudgment interest is the subject of Mrs. Sheehan's cross-appeal. The District Court determined that Mrs. Sheehan was entitled to prejudgment interest of 5.6%, or $66,749.40. Mrs. Sheehan contends that the District Court should have awarded prejudgment interest in the amount of 12%, or $141,645.00. The District Court's decision regarding prejudgment interest is reviewed for an abuse of discretion.

Mrs. Sheehan contends that her right to prejudgment interest of 12% is implied into the insurance contract between Guardian and Stiles. The contract, however, is silent on whether Guardian will pay interest on benefits that are not paid when due. Mrs. Sheehan argues that because the common law holds that insurers are obligated to pay interest on past-due benefits, the Court should imply that requirement into the insurance policy at issue. Further, because Michigan law provides that the rate of interest to be paid on insurance benefits that are not paid when due is 12%, Mich.

Comp. Laws § 500.2006, Mrs. Sheehan contends that the Court should imply into the contract a requirement that Guardian pay 12% interest on past-due benefits. Indeed, Guardian instructed its claims analysts that the interest rate for Michigan claims was 12%.

The District Court analyzed Mrs. Sheehan's claim as a matter of equity pursuant to 29 U.S.C. § 1132(a)(3)(B). (See Order of May 21, 2003, at 1 (A171).) Mrs. Sheehan contends that, because Michigan law specifically provides that interest is recoverable on benefits due but not paid, the proper analysis is under § 1132(a)(1)(B). That section provides that a beneficiary may "recover benefits due to [her] under the terms of [her] plan." According to Mrs. Sheehan, prejudgment interest is an implied term in the insurance policy, and thus is a "benefit due to [her] under the terms of [her] plan."

The District Court's decision to use § 1132(a)(3)(B) rather than § 1132(a)(1)(B) was not an abuse of discretion. If a requirement to pay interest on past-due benefits was implied into all insurance contracts, then courts would have no need to examine equitable principles when considering whether to award prejudgment interest in ERISA cases and the provisions of § 1132(a)(3)(B) would be superfluous. The District Court properly found that Mrs. Sheehan was entitled to prejudgment interest and properly relied on 28 U.S.C. § 1961 to determine the appropriate rate of interest. The Court therefore affirms the District Court, and calculates prejudgment interest using the rate established by § 1961. However, Mrs. Sheehan argues, and Guardian does not dispute, that prejudgment interest should be calculated from the date of Mr. Sheehan's death, April 17, 1997, through the date of final judgment, September 5, 2003. Therefore, the Court determines that the total amount of prejudgment interest due Mrs. Sheehan is $79,173.29.

**CONCLUSION**

For all of the above reasons, we conclude that the District Court's decisions to award insurance benefits, attorneys' fees, and prejudgment interest to Appellee were correct. The District Court's only error was in the relevant dates for the award of prejudgment interest.

Accordingly, we affirm in part and reverse in part.

———————————————