Dennis W. JARECKE, Sr., Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

No. 04–0179–CV–W–ODS.

United States District Court, W.D. Missouri, Western Division.

Nov. 4, 2004.

Roger M. Driskill, Burnett & Mcardle, Liberty, MO, for Plaintiff.

Richard J. Pautler, Thompson Coburn, St. Louis, MO, for Defendant.

*ORDER DENYING PLAINTIFF'S MO-TION FOR SUMMARY JUDG-MENT AND GRANTING DEFEN-DANT'S MOTION FOR SUMMARY JUDGMENT*

SMITH, District Judge.

Pending are cross-motions for summary judgment. After reviewing the record, the Court concludes the undisputed material facts demonstrate Defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

Plaintiff began working as a pharmacist for Wal–Mart Stores, Inc. on May 29, 2001. On that same day, he became a participant in an employee welfare benefit plan sponsored by Wal–Mart and administered by Defendant. As part of this plan, Plaintiff was covered by both short-term and long-term disability insurance. One of the critical differences between the short-term and long-term policies is the long-term policy contains an exclusion for pre-existing conditions while the short-term policy does not. A pre-existing condition is defined to include any bodily injury or illness for which the employee received medical care within the year prior to the commencement of coverage. "Medical care" is received when a doctor is consulted or dispenses advice or treatment, including examinations, tests, drugs, and so forth.

Plaintiff has received "medical care" for back and neck problems as early as September 1996, and such care extended into the one year period prior to Plaintiff's employment with Wal–Mart. Specifically,

1. On June 16, 2000, Plaintiff saw Dr. William Boulware complaining of back pain "particularly over the left dorsal sacroiliac area.... Also problems with lumbosacral radiculopathy with two epidural steroid injections." Plaintiff was diagnosed as suffering from, *inter alia*, ligament strain in the left dorsal sacroiliac, degenerative joint disease. AR at 157.[1]

2. On August 7, 2000, Plaintiff saw Dr. Steve Price complaining of pain in his back and was instructed on a variety of means to rest and relax the muscles. AR at 232–33.

3. On December 1, 2000, Plaintiff saw Dr. Terry Calhoun complaining of numbness in his right shoulder and pain and spasms in the right trapezius area. Dr. Calhoun noted Plaintiff's history of arthritic spurs in his neck and prior neck surgery (which occurred before the one-year pre-employment period). Dr. Calhoun prescribed anti-inflammatories and muscle relaxers.

4. On May 18, 2001, Plaintiff saw Dr. Boulware complaining of severe low back pain. Dr. Boulware noted that this condition had existed for some time, that Plaintiff suffered from degenerative and rheumatoid arthritis, degenerative disc disease, and bulging discs. AR at 146–47.

Plaintiff also saw Dr. Mark Chaplick on June 8, 2001. While this visit occurred shortly after Plaintiff began working for Wal–Mart, it is significant because Dr. Chaplick's report references Plaintiff's condition and treatment before he began work. Dr. Chaplick wrote that Plaintiff had "a long history of osteoarthritis and rheumatoid arthritis. He has had significant spur formation over the past ten years, predominately in his neck, shoulders, and lumbar spine." AR at 121.

On or about September 17, 2001, Plaintiff saw a rheumatologist (Dr. Anne Regier) for a consultation. Dr. Regier did not conduct any tests of her own, but rather reviewed records (including MRIs and other test results) prepared by other doctors during Plaintiff's visits to them. AR at 389–90. She disagreed with the prior assessments of inflammation and opined that Plaintiff suffered from "DISH syndrome ... sometimes called Forestier's disease. This condition is usually characterized by rather exuberant osteophytes, but some-

---

1. "AR at ____" is a reference to a page from the administrative record Defendant developed as part of Plaintiff's claim file.

times not a lot of associated pain." AR at 390.[2]

Plaintiff developed a series of problems related to Forestier's disease and eventually was rendered unable to work. He last worked at Wal–Mart on June 5, 2002, and began receiving short-term disability benefits on June 21, 2002. As Plaintiff approached the eligibility date for long-term benefits, Defendant reviewed the claim to determine whether he qualified. As part of that process Defendant obtained a statement from Dr. Boulware, in which the doctor set forth a primary diagnosis of Forestier's disease and a secondary diagnosis of "reactive airway/asthma." Dr. Boulware indicated an onset date for Plaintiff's condition of "years ago" and confirmed the referral to Dr. Regier for consultation. AR at 280. Defendant concluded Plaintiff's disability resulted from a pre-existing condition and denied his claim for long-term benefits on November 27, 2002. Plaintiff appealed the denial, but the appeal was denied on August 1, 2003.

## II. DISCUSSION

### A. Standards

#### 1. Summary Judgment

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis,* 783 F.2d 114, 115 (8th Cir.1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986); *see also Get Away Club, Inc. v. Coleman,* 969 F.2d 664 (8th Cir.1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tyler v. Harper,* 744 F.2d 653, 655 (8th Cir.1984), *cert. denied,* 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the ... pleadings, but ... by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

#### 2. Review of Defendant's Decision

▇▇▇▇ The disability plan is governed by the Employee Income Retirement Security Act ("ERISA"). "[A] challenge to the denial of benefits should be reviewed de novo, unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Sheehan v. Guardian Life Ins. Co.,* 372 F.3d 962, 966 (8th Cir.2004). The plan in this case provides that Defendant "has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy" and there is no serious dispute that this provision provides Defendant full discretion to determine eligibility for benefits. Consequently, Defendant's decision is reviewed with deference and must be upheld if it was "reasonable; i.e.,

---

**2.** An osteophyte is a "bony outgrowth or protuberance." Stedman's Medical Dictionary

1285 (27th ed.2000).

supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004).

### B. Defendant's Denial of Long–Term Disability Benefits

#### 1. Failure to Obtain Independent Medical Opinion

■ Plaintiff first contends Defendant failed to conduct an appropriate review because it failed to obtain an independent medical opinion as to whether Plaintiff's disabling condition was treated prior to his employment at Wal–Mart. There is no dispute that a plan fiduciary must base medical determinations upon information and opinions supplied by appropriate health care professionals. *E.g.*, 29 C.F.R. § 2560–503(h)(4). However, there is no requirement that a plan fiduciary retain independent health care professionals whenever such questions arise. In this case, Defendant asked Plaintiff's physician to indicate when he began treating Plaintiff's now-disabling condition; Plaintiff's physician supplied an answer, and Defendant was well within its rights to accept it. More importantly, Defendant was not obligated to obtain additional medical opinions to confirm the opinion supplied by Plaintiff's physician.

#### 2. The Determination that Plaintiff's Disabling Condition was "Pre–Existing"

■ Plaintiff's second contention asserts the determination that his disabling condition was pre-existing was arbitrary and capricious. Plaintiff primarily reiterates his prior arguments to contend there was not substantial evidence to support Defendant's decision. For substantially the same reasons expressed above, the Court concludes the statement proffered by Plaintiff's own doctor serves as substantial evidence to support Defendant's decision that was consistent with that statement. Neither the fact that his treating doctor was unaware of the name for the condition he was treating nor the fact he was not utilizing an effective treatment detracts from this conclusion.

#### 3. Failure to Provide Proper Notice Upon Denial of the Claim

■ Finally, Plaintiff argues Defendant "failed and refused to give [him] any description of any material or information that would help make the claim successful." No such duty exists. Defendant was obligated to tell Plaintiff what documents needed to be submitted in order to perfect the claim so that it may be considered. *See* 29 C.F.R. § 2560.503–1(f)(4). However, Defendant is not obligated to tell claimants what they must say (or persuade others to say) in order to succeed on their claim. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 235–36 (4th Cir.1997). Plaintiff was told what documents had to be supplied; his claim was perfected and considered by Defendant. Defendant was not obligated to tell him that he needed a statement from a doctor that contradicted the one provided by his own doctor in order to succeed on his claim.

### III. CONCLUSION

The undisputed facts in the record demonstrates there was substantial medical evidence demonstrating Plaintiff's disabling condition existed and was treated in the year before he began working for Wal–Mart, and Defendant's determination that the disabling condition was a pre-existing

condition within the terms of the long-term disability policy was not arbitrary or capricious. Defendant was not obligated to advise Plaintiff *how* to succeed on his claim, and there is no indication Defendant breached its obligation to tell Plaintiff what documents had to be submitted to perfect his claim. For these reasons, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgement is granted.

IT IS SO ORDERED.