# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-1051/1759

_____

Richard Christianson,                           *
                                                *
    Cross-Appellant/ Appellee,              *
                                                *      Appeals from the United States
v.                                              *      District Court for the
                                                *      District of Minnesota.
Poly-America, Inc. Medical Benefit              *
Plan,                                           *
                                                *      [PUBLISHED]
    Appellant/Cross-Appellee.               *
                                                *
                                                *
                                                *

_____

Submitted:  November 17, 2004
Filed:  June 20, 2005

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

As an employee of Up North Plastics, a subsidiary of Poly-America, Inc., Richard Christianson was a participant in Poly-America's Medical Benefit Plan ("the Plan"). In January 2001 he was diagnosed and treated for deep venous thrombosis ("DVT"). Poly-America denied Christianson's claim for benefits, and Christianson

subsequently sued Poly-America pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001-1461 (2000). The district court[1] granted Christianson's motion for summary judgment, and Poly-America appeals. For the reasons stated below, we affirm the judgment of the district court.[2]

## I.

The material facts are undisputed. Complaining of leg pain, Christianson entered a hospital for treatment in January 2001. He was diagnosed with DVT,[3] treated, and released six days later after incurring about $50,000 in medical expenses. In addition to the diagnosis of DVT, the medical records indicated that the risk factors for DVT included both Christianson's job, which involved prolonged standing, and the fact that Christianson was a smoker. (Index to App. at 31-37). On June 1, 2001,

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[2]Prior to filing briefs, Christianson also filed a motion to dismiss Poly-America's appeal for lack of jurisdiction because Poly-America's notice of appeal was not filed within 30 days of the October 21, 2003, summary judgment order. We deny that motion. We agree with Poly-America that the district court's October 21, 2003, order cannot be construed as a final judgment for purposes of appeal because the order granting summary judgment did not quantify the amount of damages that would be awarded as past-due benefits. This amount was never quantified, and Poly-America's request for entry of judgment was denied as moot on December 22, 2003. In light of this posture, we conclude that Poly-America's appeal was timely filed on December 30, 2003, for the merits of the judgment as well as the award of attorney's fees. See Maristuen v. National States Ins. Co., 57 F.3d 673, 678 (8th Cir.1995)("A judgment awarding damages but not deciding the amount of the damages or finding liability but not fixing the extent of the liability is not a final decision within the meaning of § 1291.").

[3]"DVT occurs when a blood clot develops in a deep vein, usually in the leg. It can cause serious complications if the clot breaks off and travels to the lungs or brain." Witty v. Delta Air Lines, Inc., 366 F.3d 380, 381-82 (5th Cir. 2004).

Poly-America denied coverage pursuant to a provision of the Plan that restricted coverage of tobacco-related conditions. Under a section titled "Summary of expenses not covered," the Plan provided, "Charges related in any way, shape or form to, or complicated by, the use of tobacco products or for treatment of an ailment or condition associated with the use of tobacco [are not covered]." (App. at 42.) While Christianson's medical records do not specifically state that Christianson's DVT was caused by smoking, Poly-America argues that the records indicate that the DVT was "related to" smoking, and therefore the Plan properly denied benefits. On appeal, Poly-America relies only upon the "related to" language in the restricting provision, and Poly-America makes no argument that Christianson's condition was "complicated by" or "associated with" tobacco use. (Appellant's Br. at 4 n.1.)

Christianson appealed the Plan's decision to deny coverage in a letter dated June 30, 2001. Christianson wrote,

> My doctors have assured me that while occasional tobacco use may be a risk factor for DVT it is impossible to determine if it had an impact in this instance. . . . There is no way to determine one way or the other if smoking was a factor and so I feel it is unconscionable for Poly-America, my long term employer, to deny coverage.

(Index to App. at 39.) After receiving the letter, Poly-America requested an informal, unwritten medical opinion from Dr. Jerry F. Gurkoff, an osteopath and orthopedic surgeon. Dr. Gurkoff never evaluated Christianson in person but reviewed the medical records from the January 2001 hospitalization. In a telephone call, Dr. Gurkoff told Poly-America that he did not think that Christianson was covered by the Plan. Relying partly upon that opinion, the Plan again denied coverage.

> In response to your letter of June 30, 2001, I have reviewed the Plan's denial of your recent medical claims. The follow [sic] elements were considered in my review:
> . . . .

4.      Medical records pertaining to the charges in question indicate that your "deep venous thrombosis" condition was related to tobacco abuse/dependency.

5.      An independent doctor has reviewed these medial records in conjunction with the 2001 Poly-America Medical Benefits Plan. In this professional's expert opinion, the subject charges are not covered by the Plan.

In light of the above, medical claims regarding your recent hospitalization have been denied.

(Id. at 40). This letter was dated July, 19, 2001. In August 2001, after the denial, Dr. Gurkoff submitted a letter to Poly-America formally providing his professional opinion that Christianson's treatment was not covered by the Plan. (Id. at 49.)

In mid-September 2001 Christianson submitted letters to the Plan from Dr. Robyn Oliver and Dr. Charles Terzian, two of the physicians who treated him in January 2001. Both letters clarified that neither physician had concluded that Christianson's DVT was "related to" or caused by tobacco use. (Id. at 50-51.) The Plan did not respond to the letters.

Christianson subsequently filed this ERISA lawsuit. The district court held a hearing during which the parties discussed the Plan's interpretation of the phrase "related to." The court posed a question to Poly-America using a hypothetical diagnosis of lung cancer, and asked how Poly-America would determine when lung cancer was "related to" tobacco use. Poly-America's counsel, interpreting the relevant exclusion clause of the policy, said, "I think you do need to show a direct link between a particular beneficiary's problem and their use of tobacco." (Id. at 80.)

Applying an abuse of discretion standard, the district court granted summary judgment to Christianson on October 21, 2003. The court made several important findings. To summarize, the court found (1) that the Plan procedure did not prohibit Christianson from filing, or prohibit Poly-America from considering, documents

submitted after a certain date; (2) by failing to argue the issue before the district court, Poly-America waived any argument that the September 2001 letters from Christianson's doctors could not be considered; (3) Poly-America conceded at a hearing before the district court that the "related to" language in the policy required a direct link between the treated condition and tobacco use; and (4) substantial evidence did not support a finding that Christianson's DVT was related to tobacco use. (Appellant's App. at 20-25.) The court awarded Christianson past-due benefits, attorney's fees, prejudgment interest, and costs.[4]

On appeal, Poly-America argues: (1) the district court improperly defined "related to" as requiring a causal link; (2) the district court improperly considered the letters from Christianson's treating physicians, submitted in September 2001; (3) the district court improperly awarded attorney's fees; and (4) the district court improperly awarded prejudgment interest.

## II.

The ultimate question in this case is whether the Plan administrator abused its discretion in denying Christianson benefits. We review de novo the district court's grant of summary judgment, using the same standards as the district court. Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004). The district court properly reviewed the Plan administrator's decision for an abuse of discretion because the plan at issue grants the Plan administrator discretion in determining eligibility for benefits and in construing the provisions of the Plan. See id.[5] For

---

[4] Christianson initially filed a cross-appeal challenging the district court's calculation of attorney's fees, but Christianson later decided not to pursue the cross-appeal. (Appellee's Br. at 24 n.8) Accordingly, we dismiss the cross-appeal, No. 04-1759.

[5] Although Poly-America argues that the district court improperly applied a less-than-deferential standard of review, we disagree. The district court opinion clearly indicates that it is applying an abuse of discretion standard of review.

several reasons, we hold that the district court properly granted Christianson's motion for summary judgment.

Poly-America first argues that the district court impermissibly crafted its own definition of the "related to" language in the Benefit Plan provision, ignoring other plausible and reasonable interpretations. The construction of this language is pivotal, because Poly-America admittedly relied upon it to deny coverage. As we discussed above, a lawyer for Poly-America, referring to the language in the first clause of the relevant provision, stated as follows:

> When you look at the language of this, it does have the first clause, charges ["]related in any way, shape or form, or complicated by the use of tobacco products.["]  In that first clause I think you do need to show a <u>direct link</u> between a particular beneficiary's problem and their use of tobacco.

(Index to App. at 80, emphasis added.) Poly-America now maintains that its counsel's statement cannot be applied to the present case because the court merely was discussing the hypothetical case of a Plan participant with lung cancer. We reject this argument. There is no logical reason why the words "related to" would require proof of a direct link between a medical problem and a Plan participant's use of tobacco when applied to the medical record of a Plan participant who has lung cancer, but the same words would not require proof of a direct link when applied to a participant who has DVT and uses tobacco products. In our estimation, the hypothetical illustrated Poly-America's interpretation of the phrase "related to" in both situations. We conclude that the district court correctly determined that Poly-America acknowledged at the motion hearing that the provision required a direct link.

---

(Appellant's App. at 18.)

Poly-America also argues on appeal that the district court improperly considered medical records submitted by Doctors Terzian and Oliver in September 2001. Poly-America insists that the Plan did not permit the Plan administrator to consider the letters submitted by Christianson's doctors because the letters were submitted too late. The district court, however, held that Poly-America had waived any objections to the admission of these materials. (Appellant's App. at 15 n.2.) Poly-America only devotes a footnote of its brief to disputing this particular finding of the district court:

> The district court ignored the untimely nature of Dr. Oliver's and Dr. Terzian's letters, saying that the Plan had not challenged the timeliness of these opinions. (A-015 n.2.) The District Court's statement is not accurate. The Plan argued that Dr. Oliver's and Dr. Terzian's letters were not entitled to any weight because, among other considerations, the letters were "post hoc."

(Appellant's Br. at 19 n.4.) Even considering this statement, Poly-America did not challenge the admissibility of the letters, only the weight to be accorded to them. Poly-America has not demonstrated that it objected to the admission of these letters. The district court's determination that Poly-America waived the argument is not in error.[6]

---

[6] In any case, it is not at all obvious to us that the Plan prohibited consideration of the letters. Relying on a provision of the Plan that explains the review process, section (3)(c), Poly-America insists that the Plan was not obliged to consider these letters "[b]ecause the Plan administrator's 60-day review process had been completed two months before the letters of Dr. Oliver and Dr. Terzian were received, and because the Plan did not allow the Plan administrator to conduct a second review." (Appellant's Br. at 11.) After reviewing section (3)(c), we believe that the Plan anticipates the submission of additional materials, even after an initial denial. Dr. Gurkoff's letter, for example, was submitted to the Plan after the denial.

Poly-America next argues that the district court improperly awarded attorney's fees and prejudgment interest to Christianson. A district court has discretion to award attorneys' fees under ERISA. Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 968 (8th Cir. 2004); Lawrence v. Westerhaus, 749 F.2d 494, 494 (8th Cir. 1984). "This Court will not overturn a District Court's decision regarding attorneys' fees absent an abuse of discretion." Sheehan, 372 F.3d at 968. "An abuse of discretion occurs when the district court commits a clear error of judgment in weighing the relevant factors." Hebert v. SBC Pension Benefit Plan, 354 F.3d 796, 801 (8th Cir. 2004) (internal citation and marks omitted).

"When considering whether to award such fees, this Court has set forth general guidelines for district courts to follow, including the five factors set forth in Westerhaus." Sheehan, 372 F.3d at 968. These factors include:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question [sic] regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

Westerhaus, 749 F.2d at 496 (alteration in original); Sheehan, 372 F.3d at 968.

The district court quoted the Westerhaus factors, and noted that they are not to be mechanically applied.

> Reviewing the relevant considerations, the [district] Court finds that Christianson is entitled to fees and costs. First, Poly-America committed a serious breach of its fiduciary duty. Second, there is nothing before the

Court to indicate that Poly-America would be unable to pay fees and costs or that they would unduly burden other beneficiaries. Third, the award in this instance would help deter such breaches in the future. Fourth, Christianson's action benefits all Plan participants by providing judicial interpretation of a significant policy exclusion. Finally, the relative merits of the case clearly favor Christianson. Accordingly, because all the relevant factors tip in favor of Christianson, he is entitled to attorneys' fees and costs.

(Appellant's App. at 26.) The district court ultimately awarded Christianson $19,354.88 in attorney's fees and costs, after reducing the amount that Christianson requested by twenty-five percent. Poly-America argues that the district court did not properly apply the factors because (1) the district court failed to evaluate the degree of the Plan's bad faith or culpability, and (2) the award is not justified under the other factors. We hold that the district court did not abuse its discretion by awarding attorney's fees. The district court clearly considered and discussed all of the relevant factors. Though Poly-America contends that the district court was required to determine bad faith, we have recognized that "a district court is not required to consider all of the factors in every case." Beatty v. N. Cent. Cos., 282 F.3d 602, 605 (8th Cir. 2002).

Finally, Poly-America contests the district court's award of prejudgment interest. In reference to the award of prejudgment interest, the district court stated, "Prejudgment interest is appropriate because (1) Poly-America has continued to have use of the money, (2) the exact amount of liability on the plan was never in doubt, and (3) an award of prejudgment interest is necessary in order . . . [to] obtain 'appropriate equitable relief.'" (Appellant's App. at 27 n.10, internal citation and marks omitted.) According to Poly-America, the award of prejudgment interest constitutes a windfall to Christianson at the expense of other Plan participants, arguably because Christianson never spent any of Christianson's money to pay medical costs.

-9-

We believe that Poly-America's argument misconstrues the purpose of prejudgment interest. "Prejudgment interest awards are permitted under ERISA where necessary to afford the plaintiff ‹other appropriate equitable relief' under section 1132(a)(3)(B)." Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999). While one purpose of the remedy is to compensate the prevailing party for financial damages incurred, id. at 946, another important purpose is to "promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141 (1986). "A common thread throughout the prejudgment interest cases is unjust enrichment–the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute." Kerr, 184 F.3d at 946. Regardless of whether Christianson spent his own money, Poly-America does not dispute that Poly-America retained the use of the funds during the dispute. We conclude that the purpose of prejudgment interest is served by the award, and thus the district court did not abuse its discretion by awarding prejudgment interest.

For the reasons stated, we affirm the judgment of the district court in No. 04-1051, and we dismiss the cross-appeal, No. 04-1759.

_____